UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                   :

JOHN MARTIN,                    :

                :

                   Plaintiff,    :         17 Civ. 6791 (KPF)

                :

             v.            :         <u>OPINION AND ORDER</u>

                :

CITY UNIVERSITY OF NEW YORK,    :

KINGSBOROUGH COMMUNITY COLLEGE, :

and LAGUARDIA COMMUNITY COLLEGE,  :

                :

               Defendants. :

                :

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

Plaintiff John Martin, proceeding *pro se*, brings this action against his former employers, the City University of New York ("CUNY"), Kingsborough Community College ("KCC"), and LaGuardia Community College ("LCC") (collectively, "Defendants"),[1] alleging violations of 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e to 2000e-17; the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. §§ 621 to 634; the New York State Human Rights Law (the "NYSHRL"), N.Y. Exec. Law §§ 290 to 297; and the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131.[2]  Construing his allegations in the

---

[1]      The Court accepts Defendants' representation that KCC and LCC are colleges within the CUNY system, and that there is, in reality, only one defendant in this case.  (*See* Dkt. #20 at 10 n.5).  However, given the references to "Defendants" in the plural in the parties' papers, and given the Court's disposition of the instant motions, the Court will not amend the caption.

[2]      Plaintiff filed his Amended Complaint using a fillable form complaint for *pro se* employment discrimination cases provided by the United States District Court for the Southern District of New York.  This form lists several potential claims under federal,

strongest manner possible, Plaintiff alleges employment discrimination (in both disparate treatment and hostile work environment forms) and retaliation based on his race and his age. Defendants move to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in this Opinion, the motion to dismiss is granted, such that Plaintiff's federal claims are dismissed with prejudice, and his state and local claims are dismissed without prejudice to their refiling.

## BACKGROUND[3]

### A.    Factual Background

The Court assumes all well-pleaded facts in Plaintiff's Amended Complaint to be true, as it must in this procedural context. Plaintiff describes himself as a white man "over 50 years old," who was previously employed by CUNY at two of its colleges, KCC and LCC. (Am. Compl. ¶¶ 1-2, 5). In 2010, one year after graduating from LCC, Plaintiff was hired to serve as an Adjunct Professor there. (*Id.* at ¶ 1). Plaintiff worked at LCC for four years before he applied to, and was hired by, KCC on September 1, 2014, as an Assistant

---

state, and local law, and a plaintiff can check boxes to indicate the claims he wishes to raise. Plaintiff's Amended Complaint only checked boxes for § 1981, the ADEA, and Title VII; it left unchecked the boxes for the NYSHRL and the NYCHRL. In keeping with the Second Circuit's decision in *McLeod* v. *Jewish Guild for the Blind*, the Court will construe Plaintiff's Amended Complaint to include claims under those two statutes as well. *See* 864 F.3d 154, 157 (2d Cir. 2017).

[3]    This Opinion draws its facts principally from Plaintiff's Amended Complaint ("Am. Compl." (Dkt. #14)), and addresses later in the text its ability to consider documents appended to Defendants' moving papers. For ease of reference, the Court will refer to Defendants' supporting brief as "Def. Br." (Dkt. #20), to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #22), and to Defendants' reply brief as "Def. Reply" (Dkt. #23).

Professor in the role of Paramedic Skills Coordinator.  (*Id.* at ¶ 2).  After his hiring at KCC, Plaintiff continued to teach at LCC one day per week.  (*Id.*).

### 1. Plaintiff's Employment at KCC

Plaintiff's direct supervisor at KCC was George Contreras, the Director of the Allied Health Department.  (Am. Compl. ¶ 3).  Director Contreras is alleged to be "of Hispanic national origin."  (*Id.*).

Two of Plaintiff's former instructors from his time as a student at LCC — Kirt Bowen and Lenel Caze — were hired by KCC at or about the same time Plaintiff was hired.  (Am. Compl. ¶¶ 4-5).  Mr. Bowen and Mr. Caze — both of whom are alleged to have been in their 40s, "black[,] and of Caribbean national origin" — had taught Plaintiff in 2009.  (*Id.*).

Although all three men were hired "in the same rank," as Assistant Professors, Mr. Bowen soon became jealous that Plaintiff obtained the role of Paramedic Skills Coordinator.  (Am. Compl. ¶¶ 4-5).  He began to make threatening comments to Plaintiff, such as, "I will destroy you.  You took my job," or "[T]he only reason you got this job is because you are white."  (*Id.* at ¶ 6).  Mr. Bowen also expressed to Plaintiff that the program would be better off with an all-black crew.  (*Id.* at ¶ 8).  Finally, Mr. Bowen, along with Director Contreras and Mr. Caze, disparaged Plaintiff's heritage, saying, "those Irish guys are always up to something."  (*Id.* at ¶ 6).

In December 2014, three months after Plaintiff was hired, Director Contreras replaced Plaintiff in the Paramedic Skills Coordinator position with Mr. Bowen.  (Am. Compl. ¶ 7).  Although Director Contreras did not give a

reason for this change, there were "indications from colleagues" that Mr. Bowen "was making negative and derogatory comments about Plaintiff behind his back." (*Id.*). At the time of the replacement, Director Contreras told Plaintiff that, although Mr. Bowen would take the position of Paramedic Skills Coordinator, Plaintiff was to "continue everything that he was doing." (*Id.* at ¶ 8). When Plaintiff protested that he was not going to continue to do the job if Mr. Bowen held the title, Director Contreras decided not to appoint Mr. Bowen, and Plaintiff retained the position. (*Id.*).

Several months later, Director Contreras's certification as a Certified Instructor Coordinator ("CIC") was suspended,[4] and Mr. Bowen was appointed Acting Director. (Am. Compl. ¶ 9). At this point, Mr. Bowen and Director Contreras began to leave Plaintiff out of meetings, and refused to communicate with him. (*Id.*). While his supervisors gave him the silent treatment, Plaintiff's peers at KCC tried to undercut him. (*Id.* at ¶¶ 9, 10). For example, in August 2015, Plaintiff was directed to present an award at a KCC graduation ceremony, but was purposely not told of the presentation in advance in order to embarrass him in front of KCC's President and its Director of Nursing. (*Id.*). After the ceremony, Mr. Caze told Plaintiff, "Don't worry, we told them you are just old and forgot." (*Id.*).

---

[4]     Certification as a CIC is granted by the New York State Department of Health's Bureau of Emergency Medical Services and Trauma Systems, and may be required for faculty positions at KCC. (Coyne Decl., Ex. 1 at 1). Defendants maintain, and Plaintiff does not dispute, that "CIC certification is particularly important for CUNY's paramedic program, because the New York State Department of Health *requires* that at least one CIC be present to teach certain courses and that the program, as a whole, employ a certain number of certified instructors." (Def. Br. 14 (emphasis in original)).

## 2. Plaintiff's Termination from KCC

Plaintiff alleges that in September 2015, he "was falsely accused of misconduct regarding his CIC certification by Director Contreras." (Am. Compl. ¶ 11). As a result, Mr. Caze took over Plaintiff's position as Paramedic Skills Coordinator, and Plaintiff "returned to a simple instructor position at KCC." (*Id.*). In June 2016, Director Contreras notified Plaintiff that his contract with KCC would not be renewed in September 2016. (*Id.* at ¶ 12). In addition, Plaintiff was not hired by KCC for the summer of 2016. (*Id.* at ¶ 13).

## 3. Plaintiff's Termination from LCC

During the summer of 2016, after Director Contreras notified Plaintiff that his contract would not be renewed at KCC, Plaintiff continued to work at LCC. (Am. Compl. ¶ 12). He also began to look for another position within the CUNY network. (*Id.* at ¶ 15). During his job search, Plaintiff learned that Mr. Bowen was providing Plaintiff's potential employers with negative references, calling him "incompetent in a defamatory fashion." (*Id.*). After hearing about these poor references, Plaintiff sent "a cease and desist letter to his KCC supervisors" in August 2016. (*Id.*).

Plaintiff then attempted to talk to Mr. Caze "to clarify his involvement about the negative references." (Am. Compl. ¶ 16). However, Mr. Caze filed a complaint with Plaintiff's supervisor at LCC, Emergency Medical Services Director Christine Alvarez, alleging that Plaintiff had intimidated him in the course of that contact. (*Id.*). Following the allegation, Director Alvarez terminated Plaintiff from LCC in September 2016. (*Id.* at ¶ 17).

**B.  Procedural History**

**1.  Plaintiff's Complaint with the New York State Division of Human Rights**

On November 23, 2016, Plaintiff commenced an administrative proceeding against CUNY and KCC before the New York State Division of Human Rights (the "SDHR").  (Coyne Decl., Ex. 3).  In his SDHR complaint, Plaintiff alleged employment discrimination based on his age and race in violation of the NYSHRL.  (*Id.* at 1).  Mr. Bowen and Director Contreras were named as the alleged discriminators.  (*Id.*).

The SDHR conducted an investigation and on May 30, 2017, issued a finding of "NO PROBABLE CAUSE to believe that [Defendants had] engaged in or [are] engaging in the unlawful discriminatory practice complained of." (Coyne Decl., Ex. 3 at 1 (capitalization in original)).  The SDHR concluded that Defendants had not renewed Plaintiff's employment contract for "legitimate, non-discriminatory reasons," and that those reasons were not "unworthy of credence and a pretext for discrimination."  (*Id.* at 2).  Plaintiff had failed to obtain CIC certification, a minimum requirement for the job, and had represented to his employer that he was in fact certified.  (*Id.*).  In addition, the SDHR noted that a significant portion of KCC employees were of comparable age to, and the same race as, Plaintiff.  (*Id.*).[5]  It found, in short, no

---

[5]    Of the 28 employees in the KCC program, ten were between 50 and 61 years of age, and 12 employees were white.  (Coyne Decl., Ex. 3 at 2).  "Furthermore, the two individuals who made the decisions to not offer the [Plaintiff] summer employment, and to not renew his employment contract were both [w]hite and older than the complainant." (*Id.*).

demonstrated "causal nexus between [Defendants'] treatment of [Plaintiff] and his age and race/color." (*Id.*). Based on these findings, the SDHR complaint was dismissed and the file closed. (*Id.*).

### 2. The Instant Action

Plaintiff filed the initial complaint in this action on September 5, 2017. (Dkt. #2). On December 13, 2017, Defendants informed the Court that they wished to filed a motion to dismiss the complaint, and the Court held a pre-motion conference with the parties on February 5, 2018, at which the Court granted Plaintiff leave to amend his complaint. (Dkt. #11-13).

On March 21, 2018, Plaintiff filed the Amended Complaint. (Dkt. #14). Defendants filed their motion to dismiss on May 7, 2018. (Dkt. #19-21). Plaintiff filed his opposition brief on June 21, 2018. (Dkt. #22). Defendants filed their reply brief on July 5, 2018. (Dkt. #23).

## DISCUSSION

### A. Applicable Law

### 1. Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"[C]ourts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  *Cruz* v. *Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).  "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson* v. *Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal citation and quotation marks omitted); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed as to do justice.").  To survive a Rule 12(b)(6) motion to dismiss, however, a *pro se* plaintiff's factual allegations must be at least "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept

as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. Documents the Court May Consider When Ruling on a Motion to Dismiss

Defendants have relied upon three documents from outside the pleadings in support of their motion to dismiss.  A Rule 12(b)(6) opinion assesses "the legal feasibility of the complaint," without "weigh[ing] the evidence that might be offered to support it," and is therefore generally confined to the four corners of the complaint.  *Glob. Network Commc'ns, Inc.* v. *City of New York*, 458 F.3d 150, 155 (2d Cir. 2006).  "[D]ocuments outside the complaint are generally off-limits on a motion to dismiss," unless they are incorporated in the complaint by reference, integral to the complaint, or matters of which the court can take judicial notice.  *See Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

Defendants put three extrinsic documents before the Court: (i) the Job Vacancy Notice for the position of Assistant Professor at Kingsborough Community College (the "Job Vacancy Notice"); (ii) the Notice of Intent to Prefer Disciplinary Charges against Plaintiff (the "Disciplinary Charges"); and (iii) the SDHR Determination and Order After Investigation (the "SDHR Order").  (Coyne Decl., Ex. 1-3).  Defendants argue that the three documents are either

"incorporated by reference" in the Amended Complaint or, in the alternative, "public records of which the Court can take judicial notice." (Def. Br. 4 n.2). The Court disagrees.

For a document to be incorporated by reference in a complaint, there must be a "clear, definite and substantial reference to the documents" in the complaint. *Horsting* v. *St. John's Riverside Hosp.*, No. 17 Civ. 3230 (CS), 2018 WL 1918617, at *3 (S.D.N.Y. Apr. 18, 2018). "[M]inor references ... cannot be said to be an express adoption or incorporation." *Tigue* v. *U.S. Dep't of Justice*, 312 F.3d 70, 81 (2d Cir. 2002). Here, the three documents are nowhere mentioned in the Amended Complaint. To be sure, Plaintiff alleges at one point that "[i]n September 2015, Plaintiff was falsely accused of misconduct regarding his CIC certification by Director Contreras." (Am. Compl. ¶ 11). Although that statement could loosely be construed as a reference to the Disciplinary Charges against Plaintiff, it falls short of the "substantial references" needed to bring the document under the Court's review.

Likewise, none of the documents is integral to the Amended Complaint. For an "integral" document to be considered on a motion to dismiss, the complaint must rely "heavily upon its terms and effect." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "[M]entioning a document in a complaint," or "offering limited quotations from the document is not enough" to satisfy this standard. *Goel*, 820 F.3d at 559. Instead, this exception is generally recognized in the case of incorporated legal

contracts "upon which the plaintiff's complaint stands or falls," *see id.*, not job postings or internal employment disciplinary records.

Having concluded that none of extrinsic documents is incorporated by reference in, or integral to, the Amended Complaint, the Court next considers whether any of them is a matter of which judicial notice may be taken under Federal Rule of Evidence 201. *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991). In order to address Defendants' argument that Plaintiff's § 1981 claim is precluded by the SDHR's "no probable cause" determination, the Court takes judicial notice of the SDHR's Opinion. (Coyne Decl., Ex. 3). However, the Court may not consider the document for the truth of its contents. *See Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). Here, the Court takes judicial notice of the facts that the SDHR proceeding took place, and that an opinion "contain[ing] certain information" was issued, "without regard to the truth of [the opinion's] contents." *Staehr* v. *Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).[6]

---

[6]     The Court declines to take judicial notice of the Job Vacancy Notice or the Disciplinary Charges. Even if the Court could take notice of these exhibits, the above analysis makes plain that it could not glean from them the facts Defendants argue in their brief. *See Bloomingburg Jewish Educ. Ctr.* v. *Vill. of Bloomingburg, N.Y.*, 111 F. Supp. 3d 459, 477 (S.D.N.Y. 2015) ("When [a] Court takes judicial notice of a document, it takes notice of the document's existence, not the truth of the statements asserted in the document."). For example, the Court could not deduce from the Job Vacancy Notice or the Disciplinary Record the factual conclusion that Plaintiff was not qualified for the KCC position because of his failure to obtain CIC certification.

**B.    The Court Declines, on This Record, to Give Preclusive Effect to the SDHR's "No Probable Cause" Determination**

As a threshold matter, Defendants argue that Plaintiff is precluded from litigating his § 1981 claims in the instant action.  (Def. Br. 8-9).  Because Plaintiff presented the same allegations to the SDHR, which rejected them on the merits in a written decision, Defendants argue that collateral estoppel precludes the assertion of those claims here.  (*Id*.).  Though there is much to commend Defendants' arguments in this regard, the Court declines, on the record before it, to find the claims precluded.

### 1.    Applicable Law

With respect to employment discrimination claims under § 1981, "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts."  *Johnson* v. *Cty. of Nassau*, 411 F. Supp. 2d 171, 178 (E.D.N.Y. 2006) (quoting *University of Tennessee* v. *Elliott*, 478 U.S. 788, 799 (1986)).  A § 1981 claim may be barred "on the basis of an earlier determination by the New York State Division of Human Rights that there was no probable cause to believe that the plaintiff had been discriminated against by his employer."  *Sullivan* v. *NYC Dep't of Investigation*, No. 12 Civ. 2564 (TPG), 2014 WL 1244666, at *2 (S.D.N.Y. Mar. 26, 2014).

SDHR decisions are given preclusive effect when (i) a plaintiff's current § 1981 claim is sufficiently similar to his claim before the SDHR, and (ii) the

plaintiff had an adequate opportunity to litigate his claim in front of the Division. *See Sullivan*, 2014 WL 1244666, at *3; *see generally Kremer* v. *Chem. Constr. Corp.*, 456 U.S. 461 (1982) (addressing preclusive effect of SDHR decision). The burden of proving identity of the issue rests on the proponent of collateral estoppel, while the opponent bears the burden of proving that he or she did not have a full and fair opportunity to litigate the issue. *See Kosakow* v. *New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 730 (2d Cir. 2001).

### 2. Analysis

In the instant action, Plaintiff brings the same claims, raises the same issues, and relies on the same facts as he did in his SDHR proceeding. Now, as then, Plaintiff alleges that Defendants violated the law by discriminating against him and ultimately firing him because of his age and race. The issues are sufficiently identical for purposes of the preclusion analysis. *See Sullivan*, 2014 WL 1244666, at *4 (finding sufficient similarity of issues when plaintiff's "claim before the Division and her § 1983 claim both arise out of the same set of facts and are premised on defendants' alleged discrimination and retaliation against her").

The more difficult question is whether Plaintiff was afforded a full and fair opportunity to litigate. At this stage of the analysis, courts look to a variety of non-dispositive factors when making a determination, and consider "the various elements which make up the realities of litigation." *Lloyd* v. *New York Botanical Garden*, No. 03 Civ. 7557 (BSJ), 2004 WL 2093468, at *3 (S.D.N.Y. Sept. 17, 2004); *see also Basak* v. *New York State Dep't of Health*, 9 F. Supp.

3d 383, 396 (S.D.N.Y. 2014) ("This form of assessment is certainly not formulaic, and requires the court, on a case-by-case basis, to balance a number of potentially competing considerations."). Among other things, courts consider whether the SDHR investigation included "any exchange of discovery, witness interviews, conferences between the parties, or hearings." *United States* v. *E. River Hous. Corp.*, 90 F. Supp. 3d 118, 153 (S.D.N.Y. 2015).

Defendants rely on *Sullivan,* without further explanation, to argue that Plaintiff received a full and fair opportunity to litigate at the SDHR level, thereby giving the SDHR's "no probable cause" finding a preclusive effect. (Def. Br. 8). While the *Sullivan* court did find that the plaintiff was precluded from relitigating his claims, it also worked to distinguish the facts of that case from *Kosakow* v. *New Rochelle Radiology Associates., P.C.*, a prior decision in which the Second Circuit found that an SDHR finding did not have preclusive effect. *See Sullivan*, 2014 WL 1244666, at *3-4 (distinguishing *Kosakow*, 274 F.3d at 730). The distinction between the two cases hinged on the fact that the *Kosakow* plaintiff had proceeded *pro se* during the SDHR proceedings, while the *Sullivan* plaintiff had obtained competent representation:

> Sullivan's case is easily distinguished from *Kosakow*. Most importantly, Sullivan was represented by experienced counsel in front of the Division. Counsel filed complaints with both state and federal agencies, revealing — at a minimum — that counsel understood that the state and federal claims were related. In front of the Division, Sullivan filed extensive briefs, framing her allegations in the context of the law.

*Id.* at *3.

Other courts in this District have hesitated to apply issue preclusion in actions brought by *pro se* litigants who represented themselves during the SDHR adjudication and, because of that concern, have opted to follow *Kosakow* in lieu of *Sullivan.  See, e.g., Basak*, 9 F. Supp. 3d at 398 ("[T]he most significant considerations involved the lack of meaningful opportunities for the claimant to develop and present her case other than in the most rudimentary form, and that her status as a *pro se* litigant before the SDHR reinforced these concerns.); *see also Lloyd*, 2004 WL 2093468, at *3.  Here, while the record is sparse, there is no information to indicate that Plaintiff, who is proceeding *pro se* in the instant action, was represented by competent counsel during the SDHR investigation.

Of course, as this Court has recognized, a plaintiff's *pro se* status is not dispositive of the issue of whether he had a full and fair opportunity to litigate. *See Peralta* v. *St. Luke's Roosevelt Hosp.*, No. 14 Civ. 2609 (KPF), 2015 WL 3947641, at *6 (S.D.N.Y. June 26, 2015) ("Further, '[t]he facts that [Plaintiff] has been proceeding *pro se* and has not yet had the benefit of discovery do not indicate that [he] did not have an adequate opportunity to litigate [his] claims in state court.'" (quoting *Xu* v. *City of New York,* No. 08 Civ. 11339 (DLC), 2010 WL 3060815, at *5 (S.D.N.Y. Aug. 3, 2010), *modified on reconsideration in part on other grounds,* 2010 WL 4878949 (S.D.N.Y. Dec. 1, 2010))).  However, in the instant action, given the limited information available, and the deference due to *pro se* litigants, the Court cannot adequately assess whether Plaintiff was afforded a full and fair opportunity to litigate his claim.  Nothing in the record

indicates whether Plaintiff (i) proceeded *pro se* during the SDHR adjudication, (ii) was provided with discovery, or (iii) had the opportunity to present and cross-examine witness.  The only pertinent document is the SDHR's written opinion, which discloses no information about the process itself.  All of these reasons operate to prevent the Court from conducting an appropriately-detailed preclusion analysis, and result in the Court's denial of Defendants' preclusion application.

**C.    The Court Dismisses Plaintiff's Federal Claims of Disparate Treatment Based on Age and Race**

### 1.    Applicable Law

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To establish a *prima facie* case of discrimination that can survive a motion to dismiss, a plaintiff must plausibly allege that he or she "[i]is a member of a protected class, [ii] was qualified, [iii] suffered an adverse employment action, and [iv] has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Plaintiff's claims under § 1981 and the ADEA are analyzed using the same framework.  *See id.* at 312 (applying the burden-shifting framework established in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973), to Title VII and § 1981 claims); *see also Carter* v. *Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *4 (S.D.N.Y. Jan. 20, 2015) (noting that a plaintiff's claims under

Title VII and the ADEA are analyzed similarly (citing *Lightfoot* v. *Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997))).

**2.    Analysis**

Defendants concede, for the purpose of this motion, that Plaintiff was a member of a protected class, and that Plaintiff suffered adverse actions in the decision not to renew his employment contract and the termination of his positions at CUNY. (Def. Br. 13). The key issues concern whether (i) Plaintiff was qualified for the positions, and (ii) the Amended Complaint raises a sufficient inference that Defendants did not renew or terminated Plaintiff's employment because of his age or his race.

**a.    Plaintiff Has Adequately Pleaded That He Was Qualified for the Position at KCC**

The issue of Plaintiff's qualifications can be disposed of quickly. To be qualified for a position under Title VII, "an employee must not only be capable of performing the work; she must also satisfy the employer's conditions of employment." *Moore* v. *City of New York*, No. 16 Civ. 7358 (RJS), 2018 WL 1281809, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd*, No. 18-947, — F. App'x —, 2018 WL 5779912 (2d Cir. Nov. 2, 2018) (summary order). An employee's own standards, or subjective view of his performance, is not relevant to the analysis. *See Thornley* v. *Penton Pub., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997).

Defendants present evidence to prove that holding CIC certification, or obtaining such certification within nine months of employment, was a condition of employment for the position of Assistant Professor at KCC. (Def. Br. 13-15 (citing Coyne Decl., Ex. 1-2)). Because Plaintiff was not certified at

the time of or within nine months of his hiring, Defendants argue, he was not qualified for the job. (*Id.* at 14-15).

Although Defendants' argument is compelling, the Court's analysis is complicated by the procedural context in which it is made. As noted, Defendants rely on documents — including the Job Vacancy Notice and the Disciplinary Charges — that this Court simply cannot consider on a motion to dismiss. These documents may well carry the day at a future summary judgment motion, but their present utility is illusory. Plaintiff has sufficiently pleaded that he was qualified, and the Court will not dismiss his federal disparate-treatment discrimination claims on that ground.

### b. Because The Proffered Comments Regarding Plaintiff's Age and Race Were Stray Remarks, Plaintiff Has Not Sufficiently Pleaded an Inference of Discrimination

Defendants argue that, even if Plaintiff were qualified for the position, he has not sufficiently pleaded that his termination from CUNY took place under circumstances giving rise to an inference of discrimination on the basis of age or race. (Def. Br. 15-19). Without an inference of discrimination, Plaintiff cannot establish a *prima facie* case of discrimination as to his federal disparate-treatment claims, and those claims cannot survive the instant motion to dismiss. *See Littlejohn*, 795 F.3d at 311 ("[The facts alleged in the complaint] need only give plausible support to a minimal inference of discriminatory motivation.").

 Plaintiff asks the Court to draw an inference of discriminatory intent based on four remarks that are purportedly related to his race or his age:

(i)     In September 2014, Mr. Bowen told Plaintiff, "I will destroy you. You took my job." (Am. Compl. ¶ 6). He often said to Plaintiff, "the only reason you got the job is because you are white." (*Id.*).

(ii)    In September 2014, Director Contreras, Mr. Bowen, and Mr. Caze often said, "those Irish guys are always up to something." (Am. Compl. ¶ 6).

(iii)   In December 2014, Mr. Bowen told Plaintiff that the KCC program would be better off with an all-black crew. (Am. Compl. ¶ 8).

(iv)    In August 2015, in response to Plaintiff presenting at a graduation ceremony, Mr. Caze told Plaintiff, "Don't worry, we will tell them you are just old and forgot." (Am. Compl. ¶ 10).

"As a general matter, verbal comments may raise an inference of discrimination, but not where they lack a causal nexus to the termination decision." *Luka* v. *Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (internal quotation omitted). The Second Circuit has established a four-factor test to determine whether alleged offensive remarks suggest discriminatory bias or are merely "stray remarks," the latter of which generally "do not constitute sufficient evidence to support a case of employment discrimination." *Danzer* v. *Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir. 1998). The test considers:

> [i] who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); [ii] when the remark was made in relation to the employment decision at issue; [iii] the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and [iv] the context in which the remark was made (i.e., whether it was related to the decision-making process).

*Fried* v. *LVI Servs., Inc.*, 500 F. App'x 39, 41 (2d Cir. 2012) (summary order).

Considering these factors, there are at least three problems with relying on

these remarks to support Plaintiff's race and age discrimination claims.

*First*, only the September 2014 comments by Director Contreras that

"those Irish guys are always up to something" were made by a decision-maker.

Although Mr. Bowen allegedly supervised Plaintiff at KCC (Am. Compl. ¶ 15),

courts consider whether the comments were made by "the ultimate decision-

maker," not merely a plaintiff's direct supervisor. *Luka,* 263 F. Supp. 3d at

487. Comments made by non-decision-makers, such as supervisors or co-

workers, are "rarely given great weight." *Silver* v. *N. Shore Univ. Hosp.*, 490 F.

Supp. 2d 354, 363 (S.D.N.Y. 2007).

Here, the majority of the comments were made by individuals who had

no role in the decision-making process to terminate Plaintiff. Furthermore,

while Director Contreras, who decided not to renew Plaintiff's contract with

KCC, commented on Plaintiff's Irish heritage (Am. Compl. ¶ 15), Ms. Alvarez,

who fired Plaintiff from LCC, (*id.* at ¶ 17), made no similar remarks. In

isolation, Director Contreras's remarks about Plaintiff's Irish heritage, while

arguably offensive, are not sufficient to allege causation. *See Adams* v. *Master*

*Carvers of Jamestown, Ltd.,* 91 F. App'x 718, 722 (2d Cir. 2004) (summary

order) ("[The Second Circuit] has repeatedly held that stray remarks of a

decision-marker, without more, cannot prove a claim of employment

discrimination." (citing *Abdu-Brisson* v. *Delta Air Lines, Inc.,* 239 F.3d 456, 468

(2d Cir. 2001))); *see also Danzer,* 151 F.3d at 56 (same).

Not only are Director Contreras's comments, without additional allegations of discriminatory animus, insufficient to allege causation in regards to Plaintiff's claim of race discrimination, but they are also wholly unrelated to his age discrimination claim. In regard to that claim, Plaintiff alleges that the one remark about his age was made by Mr. Caze — a non-decisionmaker — in August 2015. (Am. Compl. ¶ 10).

*Second*, even if the Court were to consider the remarks made by Mr. Bowen and Mr. Caze in its analysis, the proffered comments occurred at least ten months prior to the adverse employment decisions in June and August 2016. (Am. Compl. ¶¶ 6, 8, 10, 12, 17). The Second Circuit has held that, "[t]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Henry* v. *Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010). This protracted temporal gap is fatal to Plaintiff's attempt to allege causation. Even shorter intervals between comments and adverse actions have been found to be too attenuated as a matter of law to sustain a causal relationship. *See Mesias* v. *Cravath, Swaine & Moore LLP*, 106 F. Supp. 3d 431, 438 (S.D.N.Y. 2015) ("Plaintiff does not sufficiently allege a connection between either of [her supervisor's] comments and her termination. The first comment was made a year and a half before Plaintiff was fired, and the second was made more than three months before Plaintiff's termination." (collecting cases)); *see also Moore* v. *Verizon*, No. 13 Civ. 6467 (RJS), 2016 WL 825001, at *9 (S.D.N.Y. Feb. 5, 2016) ("[Defendant's] alleged remarks regarding Plaintiff's

age[, which] occurred at least months before Plaintiff's first suspension and nearly a year prior to her termination ... are non-actionable stray remarks."). Several comments occurring over the course of years, as alleged here, are similarly not enough to sustain a discrimination claim. *See White* v. *Andy Frain Servs., Inc.*, 629 F. App'x 131, 134 (2d Cir. 2015) (summary order) ("[S]everal off-color comments over the course of a year and a half about [Plaintiff] being black and Jewish ... were no more than stray remarks."); *see generally Stern* v. *State Univ. of New York*, No. 16 Civ. 5588 (NGG) (LB), 2018 WL 4863588, at *14 (E.D.N.Y. Sept. 30, 2018) (collecting cases).

Analyzing the comments and the claims collectively, the ten-month gap in time is insufficient to establish an inference of discrimination. However, when the Court analyzes Plaintiff's race and age discrimination claims separately, the remoteness of the comments to the adverse actions is even more pronounced. As discussed above, Plaintiff only alleges that one comment was made in reference to his age, a remark made by Mr. Case in August 2015. This Court cannot infer discriminatory intent from a single remark, made ten months prior to Plaintiff's termination from KCC, and 13 months prior to his termination from LCC. *See Nidzon* v. *Konica Minolta Bus. Sols., USA, Inc.*, 752 F. Supp. 2d 336, 352 (S.D.N.Y. 2010) ("The [thirteen-month] lapse in time between the comment and the adverse action is too great to infer a discriminatory motive, and the comment therefore qualifies as a stray remark."); *see also Pronin* v. *Raffi Custom Photo Lab., Inc.*, 383 F. Supp. 2d 628, 638 (S.D.N.Y. 2005) (finding that the comment, "Maybe you are too old

to be working here," which made six to eight weeks before Plaintiff was fired, was a non-probative stray remark).  Even if the comment occurred closer in time to Plaintiff's termination, it could not sustain an allegation of age discrimination on its own.  *See Jimenez* v. *City of New York*, 605 F. Supp. 2d 485, 522-23 (S.D.N.Y. 2009) (finding that "one or two 'stray remarks' … are not probative of discrimination against [Plaintiff]"); *see also Carlton* v. *Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (noting that evidence of one stray comment regarding age is generally insufficient to establish a *prima facie* case of discrimination).

Next, the Court considers only those comments regarding Plaintiff's race. All of those remarks are alleged to have been made in fall of 2014, 18 months before Plaintiff's KCC contract was not renewed, and 21 months before he was terminated from LCC.  In other words, when the one age-related comment is removed from the equation, the remarks alleging racial discrimination are even more temporally distant from Plaintiff's termination.  These comments, while arguably "offensive, do not lead to an inference of discriminatory intent."  *See Luka,* 263 F. Supp. 3d at 487.  The Court cannot infer race discrimination from comments that are followed by 18 months of silence.  *See Blundell* v. *Nihon Kohden Am.*, No. 15 Civ. 1503 (GTS) (DEP), 2017 WL 318842, at *9 (N.D.N.Y. Jan. 23, 2017) (finding that comments made 18 months prior to termination do not give rise to a reasonable inference of discrimination).

Considering again the comments as a group, the Court observes that none was made in the context of the decision-making process.  *See Moore,*

2016 WL 825001, at *9 (noting that the proffered remarks "are not alleged to have arisen in a context at all related to the decision to … terminate Plaintiff"). What is more, only the comments regarding Plaintiff's Irish heritage were made by an individual (Director Contreras) who had any "influence over the decision-making process," or played a substantial role in the decision to terminate Plaintiff. *Galimore* v. *City Univ. of New York Bronx Cmty. Coll.*, 641 F. Supp. 2d 269, 284 (S.D.N.Y. 2009). Even then, the remark was both "unrelated to the decision process," and "temporally remote from the adverse employment decision." *Schreiber* v. *Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004).

Courts in this District have declined to find that ostensibly discriminatory comments were "related to" the decision-making process in far less attenuated circumstances than those presented here. For example, even offensive comments made during a tenure review — when a plaintiff goes on to challenge the college's decision to deny her application for tenure — have been found to be insufficiently related to the decision-making process. *See Luka*, 263 F. Supp. 3d at 487-88. Here, none of the alleged comments was made in close proximity to Plaintiff's termination. The majority of them were made by individuals who not only had no control over that process, but were in no way involved in it.

Of course, stray comments may "bear a more ominous significance" when considered within the totality of all the evidence. *Carlton* v. *Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000). In the instant action, given the

lack of additional supporting allegations in the Amended Complaint, the stray remarks do not furnish support for Plaintiff's *prima facie* case. Without more, this Court cannot find that Plaintiff has sufficiently pleaded an inference of discriminatory intent. Accordingly, Plaintiff's federal race and age discrimination claims under Title VII, §1981, and the ADEA must be dismissed.

## D. The Court Dismisses Plaintiff's Federal Retaliation Claims

### 1. Applicable Law

Title VII's anti-retaliation provision makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C.2000e-3(a). For a retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege "[i] that [he] participated in a protected activity, [ii] that [he] suffered an adverse employment action, and [iii] that there was a causal connection between [his] engaging in the protected activity and the adverse employment action." *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010); *accord Duplan* v. *City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

### 2. Analysis

Plaintiff does not allege that he engaged in any sort of protected activity, prior to the filing of this action. Plaintiff has not met his burden of adequately alleging that he filed an EEO charge, initiated a lawsuit, communicated with a manager about discrimination, or engaged in any other sort of protected

activity.  Accordingly, Plaintiff falls at the first hurdle of the analysis.  His

retaliation claim fails as a matter of law and will be dismissed.

**E.  The Court Dismisses Plaintiff's Federal Hostile Work Environment Claims**

**1.  Applicable Law**

"A hostile work environment claim is composed of a series of separate

acts that collectively constitute one 'unlawful employment practice.'" *Nat'l R.R.*

*Passenger Corp.* v. *Morgan*, 536 U.S. 101, 122 (2002) (discussing 42 U.S.C.

§ 2000e-5(e)(1)).  "It is axiomatic" that a hostile work environment claim is only

actionable "when it occurs because of an employee's sex, or other protected

characteristic." *LeLaurencio* v. *Brooklyn Children's Ctr., Superintendent*, 111 F.

Supp. 3d 239, 248 (E.D.N.Y. 2015) (quoting *Brown* v. *Henderson*, 257 F.3d

246, 252 (2d Cir. 2001)).  "To establish a hostile work environment under Title

VII, § 1981, or § 1983, a plaintiff must show that the workplace is permeated

with discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Littlejohn*, 795 F.3d at 320-21 (quotation

marks and citations omitted).

"The incidents complained of must be more than episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive."

*Littlejohn*, 795 F.3d at 320-21 (citation omitted).  In evaluating "whether a

plaintiff suffered a hostile work environment," a court "consider[s] the totality

of the circumstances, including the frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 321 (citation omitted). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.*

## 2. Analysis

Here, Plaintiff's allegations do not plausibly allege that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult." *Littlejohn*, 795 F.3d at 320-21. Indeed, the alleged comments — considered individually or in tandem — are not sufficiently continuous, severe, or disruptive to show that Defendants subjected Plaintiff to a hostile work environment. *Id.*

As an initial matter, the only allegations in the Amended Complaint that arguably support discriminatory motive are those that the Court has already found insufficient in the context of Plaintiff's race and age discrimination claims under federal law. *See, e.g.*, *Hicks* v. *Rubin*, 6 F. App'x 70, 73 (2d Cir. 2001) (summary order) (affirming dismissal of hostile work environment claim for "same reason" as disparate treatment claim where plaintiff failed to establish that supervisors' conduct toward plaintiff "was motivated by race"). But even assuming Plaintiff had sufficiently alleged a discriminatory motive, his hostile work environment claim fails because the wrongdoing he alleges was "not sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment[.]" *Feingold* v. *New York*, 366 F.3d

138, 149 (2d Cir. 2004) (quoting *Alfano* v. *Costello*, 294 F.3d 365, 373 (2d Cir. 2002)).

Here, the alleged comments occurred over the course of Plaintiff's two-year employment, with none occurring in the final nine months of employment. (Def. Br. 20). Alone, each of these remarks does not amount to a hostile work environment. Considered together, they are at most "isolated and sporadic incidents, [which are] generally insufficient to establish a hostile work environment claim." *Plahutnik* v. *Daikin America*, 912 F. Supp. 2d 96, 106 (S.D.N.Y. 2012); *see also Stembridge* v. *City of New York*, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) ("Overall, seven instances [of allegedly racially hostile behavior] over three years does not create a work environment permeated with racial hostility."). Plaintiff thus fails to state a valid hostile work environment claim.[7]

**F.  The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL and NYCHRL Claims**

As noted, Plaintiff filed his Complaint using a fillable form complaint for *pro se* employment discrimination cases provided by this District. Plaintiff's

---

[7]    And because Plaintiff fails to state a claim under § 1981 against Defendants, any claim against CUNY under *Monell* v. *Department of Social Services*, 436 U.S. 658 (1978), also fails. *See Segal* v. *City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("Because the district court properly found no underlying constitutional violation [supporting a § 1983 claim], its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *see also Jones* v. *Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) ("[A] municipality can be held liable under [§] 1983 [only] if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality."). Additionally, Plaintiff has failed to demonstrate that the conduct of which he complains was the product of a municipal policy or custom, or that any Defendant acted with the requisite intent. *See generally Patterson* v. *Cty. of Oneida, N.Y.*, 375 F.3d 206, 224-26 (2d Cir. 2004).

initial and amended complaints, by their terms, referenced only claims under § 1981, the ADEA, and Title VII. This Court, in light of recent guidance from the Second Circuit, construed the Amended Complaint to allege as well claims under the NYSHRL and the NYCHRL. *See McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 157 (2d Cir. 2017). Because the Court has dismissed the federal claims on which its jurisdiction was predicated, it now considers whether to retain jurisdiction over the remaining state and local claims.

### 1. Applicable Law

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to "decline to exercise supplemental jurisdiction over" pendent state-law claims "if … the district court has dismissed all claims over which it has original jurisdiction." "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity,' in deciding whether to exercise jurisdiction." *Kolari* v. *N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)); *accord United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726-27 (1966); *cf. Benjamin* v. *N.Y.C. Dep't of Health*, 144 F. App'x 140, 142 (2d Cir. 2005) (summary order) ("In assessing whether § 1367(c)(3) discretion has been appropriately exercised, this Court looks mainly to whether a District Court reached unsettled issues of state law and to whether disposition was supported by *significant* considerations of judicial economy." (emphasis added)). Those factors generally tilt toward dismissing state-law claims: "[I]n the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* ..., the state claims should be dismissed as well.'" (emphasis in original) (quoting *Castellano* v. *Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).

### 2.   Analysis

All four of the *Gibbs* factors counsel in favor of the Court declining supplemental jurisdiction over any claims Plaintiff may have intended to bring under the NYSHRL and the NYCHRL.  *First*, judicial economy counsels in favor of dismissing the claims, given this case's limited record and short procedural history.  *See Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013).  *Second*, the Court finds nothing inconvenient about requiring the parties to litigate their dispute in New York state court.  *Third*, declining jurisdiction would not "prejudice the parties," *id.*, given that they have thus far invested limited time litigating this case.  And *finally*, comity interests militate in favor of declining jurisdiction:  Plaintiff would be seeking relief under the NYSHRL and the NYCHRL, both of which protect the rights of New York workers, and both of which provide for more expansive liability than Title VII. *See Emmanuel* v. *Cushman & Wakefield, Inc.*, No. 13 Civ. 2894 (GHW), 2015 WL 5036970, at *9-10 (S.D.N.Y. Aug. 26, 2015) (declining supplemental

jurisdiction over plaintiff's NYCHRL claim after dismissing Title VII claims, in part because of "the NYCHRL's uniquely broad and remedial purposes," and noting that "courts in this District frequently decline to exercise supplemental jurisdiction over NYCHRL claims" (alterations and citation omitted)); *Lioi* v. *N.Y.C. Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 594-95 (S.D.N.Y. 2012) (declining supplemental jurisdiction over plaintiff's NYSHRL and NYCHRL claims after dismissing Title VII claims and noting that the NYSHRL, unlike Title VII, allows for "supervisory liability").

Here, "Plaintiff['s] federal-law claims [have been] eliminated on a motion to dismiss, prior to the investment of significant judicial resources, and [the Court] can discern no extraordinary inconvenience or inequity occasioned by permitting the claims to be refiled in state court where they will be afforded a 'surer-footed reading of applicable law.'" *Kolari*, 455 F.3d at 123-24 (quoting *Gibbs*, 383 U.S. at 726). The Court accordingly declines supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, and both claims are dismissed without prejudice to their refiling in state court.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's claims under 42 U.S.C. § 1981, Title VII, and the ADEA are dismissed with prejudice, and his claims under the NYSHRL and the NYCHRL are dismissed without prejudice to permit their filing in state court. Further, because (i) Plaintiff has already been given an opportunity to amend his complaint, (ii) Plaintiff has not explained how further amendment would cure

the deficiencies identified in this Opinion, and (iii) the analysis above makes plain that any amendment of Plaintiff's federal claims would be futile, the Court denies Plaintiff leave to file a Second Amended Complaint. *See Cuoco* v. *Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming denial of motion to amend *pro se* complaint where complaint's deficiencies were "substantive" and thus repleading was futile).

The Clerk of Court is directed to terminate all motions, adjourn all remaining dates, and close this case.

Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Opinion and Order would not be taken in good faith. Therefore, *in forma pauperis* status is denied for purposes of an appeal. *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:     December 11, 2018
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge